UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Harry Jerome Evans,                              Civil No. 10-4045 (SRN/SER)

       Petitioner,

v.                                               **REPORT & RECOMMENDATION**

John King, Warden, Joan Fabian,
Commissioner of DOC, and Lori
Swanson, Minnesota Attorney General,

       Respondents.

---

      Harry Jerome Evans, *pro se*, #219265, MCF – Stillwater, 970 Pickett St. North, Bayport, MN 55003.

      Mark Nathan Lystig & Thomas R. Ragatz, Esqs., Ramsey County Attorney, 50 West Kellogg Blvd. Suite 315, St. Paul, MN 55102.

---

STEVEN E. RAU, United States Magistrate Judge

      The above-entitled matter comes before the undersigned United States Magistrate Judge on Petitioner Harry Jerome Evans' ("Evans") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] and his self-styled Motion for an Order for an Order [sic] to Stay and Abeyance [Doc. No. 3]. Evans asks this Court to stay further proceedings and to hold his Habeas Corpus Petition in abeyance while he attempts to exhaust his state court remedies for some of the claims in his Petition sub judice. Respondents have filed a response to this motion arguing that the claims Evans seeks to exhaust are procedurally defaulted. Respondents have not filed a response to the merits of the Petition. For the reasons set forth below, this Court recommends denial of Evans' Motion for an Order to Stay and Abeyance and dismissal of procedurally defaulted claims.

I.      **FACTUAL BACKGROUND**

Petitioner Evans, a prisoner at the Minnesota Correctional Facility at Stillwater, brings this habeas action against Respondents John King, Joan Fabian, and Lori Swanson (collectively "Respondents"). In 2006, Evans was convicted of the first-degree murder of St. Paul Police Sergeant Gerald Vick and was sentenced to life imprisonment without the possibility of release.[1]

As part of an undercover operation to investigate prostitution activity, Sergeants Gerald Vick and Joseph Strong went to a St. Paul bar with two suspected prostitutes on May 5, 2005. *State v. Evans*, 756 N.W.2d 854, 859 (Minn. 2008) ("*Evans I*"). After concluding that their prostitution investigation would not yield any arrests that evening, Vick and Strong remained at the bar until closing so that they could enter the bar on future occasions less conspicuously. *Id.* After leaving the bar at closing time, the officers began talking near Strong's car. Strong observed an "extremely intoxicated" man, later identified as Antonio Kelly, begin to urinate near the bar. *Id.* at 860. Strong and Vick told the Kelly to move along. *Id.* Kelly did not move on and instead approached the officers. *Id.* Kelly was joined by another man, later identified as Evans. *Id.* Strong and Vick told Evans to "get your friend and get him out of here." *Id.* Kelly and Evans did not respond and so the officers "used stronger language" and told Evans and Kelly to leave. *Id.* Evans tried to convince Kelly to leave and began to "drag" Kelly along. *Id.* Evans and Kelly began to leave the area, but first Evans made a gesture by reaching for his waist and raising his shirt. *Id.* Based on his law enforcement experience, Strong understood the gesture to be a threat suggesting Evans had a gun or could get a gun. *Id.* Vick then raised his shirt in what Strong described as "a mocking gesture" and said "so what." *Id.*

Strong and Vick then finished their conversation. *Id.* Strong got into his car and began

---

[1] The facts and procedural history provided herein are taken from Evans' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, (hereinafter "Petition") and the decision in *State v. Evans*, 756 N.W.2d 854 (Minn. 2008).

to drive away. *Id.* Strong stopped at a stoplight and Kelly stepped in front of Strong's car. *Id.* Strong then rolled down his window and told Kelly to get away from the car. *Id.* Strong then used his walkie talkie to call Vick for backup. *Id.* Vick drove up and Strong noticed Evans was there as well. *Id.* Vick and Strong then began "pushing" at Kelly and Evans, "running toward them making noise and stomping [their] feet to let them know that [Strong and Vick were] behind them and that [the officers] wanted them to leave the area." *Id.* Strong and Vick kept "pushing" at Evans and Kelly until Strong heard three or four shots and saw Vick fall to the ground. *Id.* at 861. Strong testified that Evans was the person in a position to have shot Vick. *Id.* Strong then fired at Evans eight or ten times but Evans ran through a yard and out of view. *Id.* Vick died later that morning. *Id.*

Kelly testified at trial against Evans, stating he assumed the shots came from Evans. *Id.* After hearing the shots, Kelly ran and hid in some bushes and Evans joined him shortly thereafter. *Id.* Kelly testified that Evans stated "I got him. I think I got one." *Id.* Kelly and Evans hid for ten to fifteen minutes and Kelly saw Evans throw a gun over the side of a porch. *Id.* Kelly began walking home and was arrested and taken to police headquarters. *Id.* Evans was arrested later that morning at approximately 6:00 a.m., three or four blocks from the shooting. *Id.*

At the time of the shooting, a witness, J.M., was returning home from Regions Hospital with his parents, riding in the front passenger seat of a car. *Id.* He witnessed the incident and testified at trial on behalf of the government. *Id.* J.M. identified the shorter of the two males, Evans, as the shooter in the incident. Physical evidence also linked Evans to the gun used to shot Vick. *Id.* DNA on the gun indicated a mixture of DNA from two or more individuals. *Id.* Testing eliminated Kelly and Vick as the DNA contributors, but could not eliminate Evans. *Id.*

3

at 862.

At trial, Evans argued Kelly was the shooter. *Id.* He also argued that Strong and Vick were not "on duty" that night, an element of the crime charged, because the officers were legally intoxicated. *Id.* A jury found Evans guilty of first degree murder in violation of Minn. Stat. § 609.185(a)(4). *Id.* The trial court sentenced Evans to life in prison. *Id.*

## II. PROCEDURAL BACKGROUND

Evans appealed his conviction to the Minnesota Court of Appeals and Minnesota Supreme Court. In his direct appeals Evans argued that: (1) he was denied a fair and impartial jury because the trial court failed to investigate a telephone tip that a juror was racially biased; (2) his right of confrontation was violated with respect to witness J.M. because Evans was only given limited access to J.M.'s medical records[2] and he was limited in his questioning on cross-examination of J.M.; (3) the court instructed the jury erroneously that Evans need not have known that Vick was a police officer; (4) the district court erred in not issuing an accomplice jury instruction; and (5) Evan's right to a fair trial was violated because of presentation of "spark of life" evidence.[3] Evans also submitted a *pro se* supplemental brief arguing: (1) the evidence was insufficient to support the verdict, specifically that Vick was on-duty at the time of the shooting; (2) the trial court erred in admitting into evidence two statements made by Sergeant Frazer during an interview with Evans; (3) the trial court erred in denying Evans a change of venue; (4) the court erred in denying Evans the ability to impeach and cross-examine Kelly with an audio-taped telephone conversation between Kelly and his girlfriend; and (5) Evans was

---

[2] Evans argued that J.M.'s medical records were relevant because he may have been in distress or had diminished mental capacity at the time he witnessed the shooting because of his recent hospitalization.

[3] "Spark of life" evidence is limited biographical information about a victim to present the victim as a human being. *State v. Graham*, 371 N.W.2d 204, 207 (Minn. 1985) Such evidence is admissible in a criminal prosecution as long as it does not invoke undue sympathy for the victim or inflame the jury. *State v. Morton*, 701 N.W.2d 225, 236-37 (Minn. 2005).

denied a fair trial because of multiple instances of prosecutorial misconduct.

The Minnesota Supreme Court initially retained jurisdiction and remanded the case to the district court to release information about the juror telephone call so the parties could conduct an investigation and possibly move for additional proceedings on the issue of juror bias. *Id.* at 859. After the remand and investigation, Evans moved for a *Schwartz* hearing.[4] After the trial court conducted a *Schwartz* hearing, the court denied Evans' motion for a new trial. On appeal Evans argued that the *Schwartz* hearing was tainted because the State contacted the juror in question. The Minnesota Supreme Court affirmed Evans' conviction on appeal. *Id.* at 863-881.

After the resolution of his direct appeal, Evans learned from his appellate counsel that during the investigation of another 2008 murder, a witness, McClinton, told police that "he was told by Antonio Kelly that Kelly shot Sgt. Gerald Vick." *Evans v. State*, 788 N.W.2d 38, 42 (Minn. 2010) ("*Evans II*").

In August 2009, Evans filed a petition for postconviction relief in state court. The district court denied the petition and the Minnesota Supreme Court affirmed. *Id.* at 41. In his postconviction proceedings, Evans argued he was entitled to a new trial or evidentiary hearing based on the new evidence from McClinton. *Id.* at 43. The postconviction court granted the State's motion to dismiss and denied Evans' requests for a new trial or evidentiary hearing. *Id.* Following dismissal of his postconviction petition, Evans filed a motion to compel the disclosure of McClinton's statements and related reports. *Id.* He also filed a petition for a writ of mandamus from the court of appeals, asking the court to require the postconviction court to order the state to disclose the statement and associated reports. *Id.* The court of appeals denied the

---

[4] Minnesota Rule of Criminal Procedure 26.03, subd. 9, provides for the examination of a juror, out of the presence of the other jurors, about the juror's exposure to material that raises serious questions of possible prejudice. Such a hearing is commonly referred to as a *Schwartz* hearing. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328 (1960), *cited in Holt v. State*, 772 N.W.2d 470, 476 n. 3 (Minn. 2009).

5

petition for writ of mandamus. *Id.* The postconviction court also denied Evans' motion to compel. *Id.*

Evans then appealed to the Minnesota Supreme Court arguing: (1) ineffective assistance of trial counsel; (2) the district court violated his right to allocution at sentencing; (3) the court erred in concluding Vick was performing official duties at the time of his death; (4) ineffective assistance of appellate counsel for his direct appeal; (5) he was entitled to a new trial based on alleged evidence that Kelly admitted he shot Vick; and (6) his due process rights were violated because the government failed to produce the police statement in which McClinton recounted Kelly's statement. The Minnesota Supreme Court concluded that Evans' claims of ineffective assistance of counsel, violation of his right to allocution, and the error in concluding Vick was performing official duties, were barred under *State v. Knaffla*, 243 N.W.2d 737 (1976). *Evans II,* 788 N.W.2d at 44. With respect to the ineffective assistance of appellate counsel, the Minnesota Supreme Court concluded that Evans had not shown that the results of the proceeding would have been different but for the lawyer's errors. *Id.* at 45. Because analysis of whether Evans' appellate counsel was ineffective necessarily implicated his trial counsel's effectiveness, the Minnesota Supreme Court considered Evans' trial counsel's effectiveness, even though claims related to his trial counsel were barred. The court concluded that Evans' trial counsel was not ineffective, and therefore his appellate counsel was not ineffective in failing to raise those claims. *Evans II*, 788 N.W.2d at 47. In relevant part to the instant Petition, the Minnesota Supreme Court rejected Evans' argument that his counsel was ineffective in failing to raise issues regarding the police's taking of his DNA and in failing to challenge the constitutionality of the search of Evans' residence. *Id.* at 45-47. Evans also argued, and the Minnesota Supreme Court rejected, that his counsel was ineffective in agreeing to the wording of the subpoena cover

letter sent to the allegedly biased juror, which permitted the attorneys to speak to the juror. *Id.* at 47. The court also rejected Evans' argument that he was entitled to a new trial based on the new evidence from McClinton that Kelly had admitted to shooting Vick. *Id.* at 47-48. Finally the court held that any error in failing to order production of the McClinton statement was harmless. *Id.* at 50.

Evans filed the instant Petition on September 24, 2010 raising ten grounds for relief: (1) denial of a fair trial because of a biased juror; (2) violation of the Confrontation clause based on limitations on Evans' ability to cross-examine witness J.M.; (3) ineffective assistance of trial counsel and prosecutorial misconduct; (4) insufficient evidence to prove the offenses charged (*i.e.* that Vick was not on duty and that Evans did not commit the crime, Kelly did); (5) violation of the privilege of self-incrimination by the taking of DNA from Evans; (6) unconstitutional search and seizure of evidence from Evans' residence; (7) denial of Evans' right to be present at the hearing where the lawyers determined the procedures to be followed with respect to the *Schwartz* hearing; (8) violation of Due Process because Evans' conviction did not meet "the standard of certainty" required by law; (9) improper *ex parte* contact with a juror by the government in anticipation of the *Schwartz* hearing; (10) unconstitutional selection of the grand jury and petit jury; and (11) denial of due process based on new evidence establishing innocence. At the same time as the Petition, Evans filed the instant Motion for Stay and Abeyance. Evans asks this Court to stay proceedings on his Petition while he attempts to exhaust his state court remedies for grounds Five, Six, Seven, and Ten.[5]

---

[5] Although Evans does not mention ground Five specifically as an unexhausted claim, it does not appear to this court that Evans ever raised the DNA seizure in his previous appellate proceedings apart from arguing that his trial counsel was ineffective in not raising an issue with respect to the taking of DNA.

## III. DISCUSSION

Respondents assert that Evans' motion to stay should be denied because the claims he seeks to exhaust have been procedurally defaulted. This Court agrees.

Generally, when a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by granting a stay and abeyance to allow the petitioner to exhaust his unexhausted claims. *Rhines v. Weber*, 544 U.S. 269 (2005); *Jackson v. Symmes*, No. 09-2946, 2011 WL 1300930, *10 (D. Minn. Jan. 18, 2011) (quoting *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005)). When a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim is not "unexhausted," but rather, is "procedurally defaulted." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Staying habeas proceedings is futile when a claim is procedurally defaulted. *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1351 (11 Cir. 2004) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *see also Leonhauser v. Palakovich*, No. 08-1175, 2009 WL 7133658, *2 (E.D. Pa. Feb. 4, 2009); *Nardi v. Schriro*, No. 01-1185, 2008 WL 4446963, *50 (D. Ariz. Sept. 30, 2008). If a habeas petitioner cannot show an exception or excuse for the procedural default, then the court should deny the defaulted claim without addressing the claim on the merits. *Jackson v. Symmes*, 2011 WL 1300930, at *10 (citing *Carney v. Fabian,* 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006)); *see also Farnsworth v. King*, No. 09-333, 2010 WL 2346581, 16 (D. Minn. March 2, 2010).

As set forth below, Evans unexhausted claims are procedurally defaulted. Granting a stay and abeyance of the instant habeas petition, therefore, is futile. Further, because the unexhausted claims are procedurally defaulted, those claims should be dismissed on the merits.

### A. Evans' Unexhausted Claims Are Procedurally Defaulted

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies and fairly present his federal constitutional claims to the highest available state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion requirement is met when a petitioner fairly presents his federal constitutional claims in a complete round of the state's established appellate review process. *Id.* In Minnesota, a complete round of the established appellate review process includes filing a petition for review in the Minnesota Supreme Court and proceeding if review is granted. *Johnson v. Minnesota*, Civ. No. 10-861, 2010 WL 2682882 at *2 (D. Minn. Apr. 5, 2010) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). A federal claim is "fairly presented" when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quoting *Myre v. State of Iowa*, 53 F.3d 199, 200-01 (8th Cir. 1995)); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991). "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted. A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation

of the claim. *Coleman*, 501 U.S. at 750. Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *Knaffla*, 243 N.W.2d at 741. When a claim is waived in the State's highest court, then it is procedurally defaulted. *See e.g. Farnsworth*, 2010 WL 2346581, at *17. There are two exceptions to *Knaffla*: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal; and (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006).

When a claim is procedurally defaulted in state court, the federal court considering the habeas petition must determine whether the default is excused because the petitioner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice. *McCall*, 114 F.3d at 758 (citing *Coleman*, 501 U.S. at 750). In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented timely and procedurally proper presentation of his claims to the state's highest court. *Coleman*, 501 U.S. at 753. Prejudice is not considered when a petitioner fails to satisfy the requirement of cause. *McCall*, 114 F.3d at 758. The miscarriage of justice exception is only available to a petitioner who demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person. *Id.* To qualify for the miscarriage of justice exception, a petitioner must "present some compelling new evidence, which would conclusively establish that he is, in fact, innocent of the crimes and sentencing factors found by the jury." *Crowell v. Fabian*, No. 08-6355, 2009 WL 3806412, *9 (D. Minn. Nov. 12, 2009). If the cause and prejudice or miscarriage of justice exceptions do not apply, procedural default

10

cannot be excused, and the court will deny the petition without addressing the merits of the claim. *Carney v. Fabian*, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

In this matter, Evans did not fairly present any of the unexhausted claims to the state court. Evans never argued that his constitutional rights were violated with respect to the taking of his DNA, the search of his residence, or the empaneling of the grand or petit jury--either on direct appeal or in his postconviction proceedings. Although Evans made arguments related to the *Schwartz* hearing in his previous appeals, he did not raise the issue he argues in the instant Petition: that is, that he was not present at the hearing where the parties and court decided on the procedures to be followed for the *Schwartz* hearing. Because Evans did not fairly present these claims in the state courts, this Court must consider whether the claims are unexhausted or procedurally defaulted.

        1.     Grounds Five and Six

Evans' grounds five and six, related to the taking of his DNA and the search of his residence, are procedurally defaulted. In the underlying postconviction proceedings, Evans argued that his trial counsel was ineffective for not raising these issues, but he did not argue the underlying constitutional claims. Thus, Evans knew about these claims but did not raise them and he is barred from raising them again under *Knaffla*. None of these claims fall within the exceptions to the *Knaffla* rule because the claims are not novel and Evans inexcusably failed to argue these issues to the Minnesota courts. Nor has Evans demonstrated cause and prejudice for the default, or that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. Evans has not offered any argument as to why he could not have raised these issues in the state court proceedings or evidence demonstrating that he is an innocent person convicted because of a constitutional violation. Because the claims are procedurally

defaulted and not subject to an exception, it would be futile to stay these proceedings and allow Evans to attempt to exhaust the claims in state court. The Motion to Stay should therefore be denied and the claims should also be dismissed on the merits.

  2. Ground Seven

Ground Seven of the Petition is also procedurally defaulted. In state court, Evans asserted that his constitutional rights were violated when the state interviewed an allegedly biased juror before the *Schwartz* hearing and that his lawyer was ineffective in agreeing to the subpoena cover letter to the juror, which allowed the attorneys to contact the juror. After the Minnesota Supreme Court rejected those arguments, Evans now asserts that his rights were violated when he was denied the opportunity to be present at the hearing where the trial court determined the procedures to be used related to the *Schwartz* hearing. Although Evans challenged his counsel's agreement related to the letter to the juror, he did not allege that his constitutional rights were violated because he was not allowed to attend the hearing. Clearly, Evans knew about this claim that he was not in attendance at the hearing in question at the time of his postconviction proceedings. He, therefore, cannot go back to state court at this time and seek additional postconviction relief to cure his procedural default. Because he did not raise this claim with the state courts previously, *Knaffla* bars the claim. The *Knaffla* exceptions do not save his claim from procedural default. Nor can this Court excuse his procedural default of ground Seven. The motion to stay should be denied and the claim dismissed.

  3. Ground Ten

Finally, ground Ten is also procedurally defaulted. Evans never made any arguments regarding the selection of the grand jury or petit jury on direct appeal or in his postconviction proceedings, despite the fact that he should have known about such claims at the time of his

direct appeal. Obviously, Evans knew about any jury selection claims while his case was being reviewed on direct appeal, and can no longer go back to the state courts to seek additional postconviction relief. Neither of the *Knaffla* exceptions apply because claims related to jury selection are not novel and Evans has not argued or demonstrated that he did not inexcusably raise the claims on direct appeal. Finally, Evans has not shown cause or prejudice for the procedural default of claims related to jury selection or that a fundamental miscarriage of justice would result from procedurally dispensing with the claim. It would be futile to stay this habeas proceeding to allow Evans to attempt to exhaust this claim. The motion to stay should therefore be denied and this claim be dismissed.

## IV.   RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Evans' Motion for an Order for an Order for Stay and Abeyance [Doc. No. 3] be **DENIED**;

2. Grounds Five, Six, Seven, and Ten in Evans' Petition for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED** and **DISMISSED WITH PREJUDICE;**

3. Within 30 days after the District Court issues an order on this Report & Recommendation, Respondents are directed to respond to the merits of grounds One through Four, Eight, Nine, and Eleven of the Petition, showing cause why Evans should not be granted a writ of habeas corpus as to those claims. Evans shall file any response within 30 days of the date of Respondents' brief.

Dated: July 29, 2011                s/ Steven E. Rau
                                                                    STEVEN E. RAU
                                                                    United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 12, 2011,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.